IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| REGINALD BELL,          ) | |
| )                         | |
|    Plaintiff,          ) | |
| )                         | |
| v.                       ) | CIVIL ACT. NO.  2:14-CV-1167-MHT |
| )                         | (WO) |
| ROCK-TENN,               ) | |
| )                         | |
|    Defendant.         ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the court is the Defendant's motion to transfer this case to the United States District Court for the Southern District of Alabama, Northern Division. (Doc. 7). Having considered the motion and the Plaintiff's response, the court concludes that the motion is due to be granted.

**I.   Discussion**

**A.   Background**

*Pro se* Plaintiff Reginald Bell is a resident of Gallion, Alabama. Bell asserts that Defendant Rock-Tenn Services, Inc., ("Rock-Tenn") unlawfully terminated his employment at its pulp and paper mill in Demopolis, Alabama, after failing to accommodate his disability and after he was subjected to harassment and discrimination in the workplace on the basis of his race and disability. (Doc. 1 pp. 1-2).  Bell alleges that the foreman, superintendent, and human resources officer at the Demopolis mill are primarily responsible for the alleged unlawful employment practices.  (Doc. 1 p. 2).  He also contends that some of the unlawful

practices began in response to an unknown number of union workers who called an anonymous hotline to complain that they were afraid to work with him at the Demopolis mill because of his disability. (Doc. 1 p. 2). Bell seeks compensatory damages as well as an injunction restoring his former job at the Demopolis plant. (Doc. 1 p. 3).

Demopolis is located in Marengo County. Gallion is located in Hale County. The Northern Division of the United States District Court for the Southern District of Alabama encompasses both Marengo and Hale Counties.

On December 31, 2014, Rock-Tenn filed a motion requesting that this case be transferred to the United States District Court for the Southern District of Alabama, Northern Division, on grounds that litigating there would serve the convenience of the parties and the witnesses and would promote the efficient administration of this case. (Doc. 7). On January 20, 2015, Bell filed a response to the motion, which is now under submission.

**B.     Analysis**

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought." 28 U.S.C. § 1404(a). "[F]ederal courts traditionally have accorded a plaintiff's choice of forum considerable deference." *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). Thus, the burden is on the movant to establish (1) that the action originally could have been brought in the suggested forum and (2) that the litigating in the suggested forum is more convenient and would serve the interest of justice. *Id.*; *C.M.B. Foods, Inc. v. Corral of*

*Middle Ga.*, 396 F.Supp.2d 1283, 1285 (M.D. Ala. 2005).

Bell claims that he was subjected to race discrimination in his employment at the Demopolis mill, and he also claims that his employer failed to accommodate his disability and discriminated against him on the basis of his disability. Thus, Bell's claims are subject to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*. Title VII and ADA claims "may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed [or] in the judicial district in which the employment records relevant to such practice are maintained and administered." 42 U.S.C. § 2000e-5(f)(3); *see also* 42 U.S.C. § 12117. Thus, this case could properly have been filed in the United States District Court for the Southern District of Alabama.

In considering whether the Rock-Tenn has demonstrated that the suggested forum is more convenient and serves the interest of justice, the court considers a variety of case-specific factors such as

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) [the suggested] forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005); *see also Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (holding that a motion to transfer

venue requires the court to "balance a number of case-specific factors" in an "individualized, case by-case consideration of convenience and fairness" (citation and internal quotation marks omitted)).

It is undisputed that the locus of operative facts in this case is located in the Northern Division of the United States District Court for the Southern District of Alabama. Doubtless, the courts in both the Middle and Southern Districts of Alabama are equally familiar with the law governing Title VII and ADA cases. However, litigation of this case in the Northern Division of the United States District Court for the Southern District of Alabama will provide the greatest of access to the relevant evidence, such as the plaintiff's employment and medical records and any relevant documents in Rock-Tenn's possession, all or most of which will undoubtably be located there. In fact, on this record, there is no basis for concluding that any relevant documents, evidence, or witnesses will be located in the Middle District of Alabama. Therefore, transfer is warranted in light of the "locus of operative facts," "[the suggested] forum's familiarity with the governing law," and "the location of relevant documents and the relative ease of access to sources of proof." *Manuel*, 430 F.3d at 1135 n.1.

The courthouse for the Northern Division of the Middle District of Alabama is located in Montgomery, Alabama, approximately 100 miles from Demopolis, and there is no courthouse in this district closer to Demopolis. The courthouse for the Northern Division of the United States District Court for the Southern District of Alabama is located in Selma, Alabama, which is approximately 50 miles from Demopolis. Gallion, where the plaintiff

4

resides, is approximately 45 miles from the federal courthouse in Selma and 95 miles from the federal courthouse in Montgomery.  U.S. Highway 80[1] is the most direct route from Demopolis and Gallion to Montgomery, and along the way it passes through Selma.  Thus, there can be no question that litigating this case in Selma rather than Montgomery will be more convenient for the potential witnesses in this case, including the plant foreman, the plant superintendent, the human resources officer, the union members who complained that they did not want to work with Bell (assuming they can be identified), and any other relevant witnesses who would have personal knowledge regarding the alleged discrimination at the Rock-Tenn plant in Demopolis.  *See Manuel*, 430 F.3d at 1135 n.1 (holding that "the convenience of the witnesses" is a key factor in considering a motion to change venue).

Further, the court notes the substantial likelihood that a number of witnesses will reside more than 100 miles from the Montgomery courthouse, which limits this court's ability to subpoena those witnesses to attend trial, Fed. R. Civ. P. 45(c)(1)(B), and precludes this court from issuing subpoenas to them to attend hearings, Fed. R. Civ. P. 45(c)(1)(A).  The court in Selma would face no similar limitations.  This, as well as the fact that both parties and all or most witnesses and evidence are located in the Southern District of Alabama, leads to the conclusion that judicial administration and trial of this case will be more efficient if conducted there.  *See Manuel*, 430 F.3d at 1135 n.1 (holding that, in considering a motion to change venue, "the availability of process to compel the attendance of unwilling

---

[1] Rock-Tenn's Demopolis plant is located on U.S. Highway 80.  (Doc. 4).

witnesses" is an important factor).

Moreover, because both parties are 50 miles closer to the federal courthouse in Selma than to the federal courthouse in Montgomery, litigating in Selma rather than Montgomery would be more economical for both of them. Thus, the relative means of the parties does not favor litigation in Montgomery, and the convenience of both parties favors litigation in Selma. *See Manuel*, 430 F.3d at 1135 n.1 (holding that, on a motion to change venue, the court should consider "the convenience of the parties" and "the relative means of the parties").

The court recognizes that "[t]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996). However, where, as here, "the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration." *Gould v. Nat'l Life Ins. Co.*, 990 F. Supp. 1354, 1358 (M.D. Ala.1998) (quoting *Garay v. BRK Elec.*, 775 F. Supp. 1010, 1011 (M.D. Fla.1991)). Moreover, in light of the fact that the Southern District, and not this District, is Bell's "home forum," the "'presumption in the plaintiff's favor applies with less force, for the assumption that the chosen forum is appropriate is then less reasonable.'" *Dendy v. Decker Truck Line, Inc.*, 2010 WL 3398987, 4 (M.D.Ala. 2010) (quoting *Sinochem Int'l. Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007)). Bell himself does not contend that considerations of convenience and the efficient administration of justice favor litigation in

6

his chosen forum. Instead, he asserts that his chosen forum is appropriate because the general population in the Southern District of Alabama is subject to racial prejudice, as evidenced by its history, and that prospective jurors will be subject to the political and economic influence of Rock-Tenn, which employs a number of people in Demopolis. (Doc. 11).

"Concededly, a 'fair trial in a fair tribunal is a basic requirement of due process.'" *Withrow v. Larkin*, 421 U.S. 35, 46 (1975) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955). A biased decision maker is "constitutionally unacceptable," and our legal system has always endeavored to prevent the probability of bias due to such factors as racial prejudice or a pecuniary interest in the outcome of the case. *Id*. Ordinarily, and particularly where all other factors of efficiency, justice, and convenience weigh heavily in favor of litigating in a forum allegedly subject to concerns of a biased jury pool, such concerns can be quite adequately addressed by the use of *voir dire* in the jury selection process. *See Mu'Min v. Virginia*, 500 U.S. 415, 431 (1991) ("*Voir dire* examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges."); *United States v. Vera*, 701 F.2d 1349, 1355 (11th Cir. 1983) ("The purpose of *voir dire* is to enable the defendant to evaluate the prospective jurors and select a fair and impartial jury."); *Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 631 (5th Cir. 2008) (holding that, where the trial court used the *voir dire* process to fulfill "its responsibility to protect the interests of justice by selecting a jury free from prejudice," the

court had properly denied a motion to change venue over the defendant's concerns of potential juror bias).

When a party alleges that he will not receive a fair and impartial jury in a more convenient forum due to the potential for racial prejudice, the defendant's political influence, or jurors' pecuniary interest in the outcome, that party must demonstrate the probability of actual prejudice[2] with evidence and cannot rely on mere speculation. *See* 15 Charles R. Wright, *et al.*, *Federal Practice and Procedure* § 3854 (noting that "the possibility of prejudice against a party, whether on grounds of race, publicity, or the dominant influence of a particular party in a community" ordinarily "does not merit judicial concern in most cases, because there usually is no demonstration of the charge; it is usually a matter of speculation. Some courts have refused to take such things into account, but others have given weight to the possibility of local prejudice, but only when the record contains a basis for concern about it."); *see also Aquatic Amusement Assocs., Ltd. v. Walt Disney World Co.*, 734 F. Supp. 54, 59 (N.D.N.Y. 1990) (rejecting the plaintiff's contention that change of venue was required because the defendant employer was "an important economic force and employer in central Florida and that juries in that area might be unduly friendly to the defendants;" "[t]hough the court had no doubt that [the defendant employer was] looked upon with favor by the people of central Florida, the 'evidence' provided by the plaintiff,

---

[2]The court notes that this is not a case involving presumed prejudice due to pretrial publicity. *See Mu'Min*, 500 U.S. at 429 (1991) ("[A]dverse pretrial publicity can create such a presumption of prejudice in a community that the jurors' claims that they can be impartial should not be believed, but this is not such a case." (citations and internal quotation marks omitted)).

8

which consist[ed] of two magazine articles, d[id] not establish that a fair minded jury could not be drawn from the Middle District of Florida").

In this case, Bell has not presented any evidence that he is unlikely to obtain a fair and impartial jury in the Southern District of Alabama.  Bell makes an unsupported assertion of "prejudice[] and racial history" in the Southern District.  (Doc. 11).  However, Bell has offered no reason why Alabama's history of racial prejudice is any more relevant to the selection of an impartial jury in the Southern District than in the Middle District.[3]  Both districts are located in Alabama, both courts regularly hear cases involving allegations of racial discrimination within their districts, and both courts are fully accustomed to impaneling impartial jurors despite Alabama's history and the potential for racial prejudice.

Bell also contends that, because Rock-Tenn is a large corporation that employs a number of people in Demopolis, he is concerned that potential jurors will be affected by Rock-Tenn's influence on "labor and politics." (Doc. 11).  However, both the Southern and Middle Districts are accustomed to impaneling impartial juries in cases brought by individual plaintiffs against their employers and other large corporations, despite the defendants' potential economic and political influence in the general population.

---

[3] The court takes judicial notice of the fact that, although Selma is famous for its place in the history of the struggle for racial equality, Montgomery is as well.  For instance, while the Edmund Pettus Bridge in Selma was the site of Bloody Sunday on March 7, 1965, the federal courthouse in Montgomery is immediately adjacent to the former Greyhound bus station that was the site of a notoriously violent riot against Freedom Riders in May, 1961.  Moreover, a number of pivotal civil rights cases originated in the Middle District and were litigated at the federal courthouse in Montgomery.  *See, e.g., Lee v. Macon County Bd. of Ed.*, 221 F. Supp. 297 (M.D. Ala. 1963) (holding school segregation unconstitutional); *Browder v. Gayle*, 142 F. Supp. 707 (M.D. Ala. 1956) (holding unconstitutional racial segregation on the City of Montgomery's buses).

Thus, absent any evidence to the contrary, there is no reason to conclude that Bell's right to an impartial jury cannot be accommodated just as efficiently and effectively in the Southern District as in the Middle District. *See Aramburu v. Boeing Co.*, 896 F. Supp. 1063, 1065 (D. Kan. 1995) (rejecting "the plaintiff's contention that he will have more difficulty finding a fair and impartial jury" in the more convenient district containing the factory where the alleged employment discrimination occurred than in his chosen venue; "[t]he court [was] confident that the plaintiff's concerns that . . . residents [of the more convenient venue] will be reluctant to hold against [the employer] will be adequately addressed during *voir dire* of the prospective jurors"); *see also Manuel*, 430 F.3d at 1135 n.1 (holding that, in a considering a motion to change venue, the court should consider "the interests of justice, based on the totality of the circumstances")

Accordingly, the court concludes that, "[f]or the convenience of the parties and witnesses, in the interest of justice" this case is due to be transferred to the United States District Court for the Southern District of Alabama, Northern Division. 28 U.S.C. § 1404(a).

## II.   Conclusion

Accordingly, it is the **RECOMMENDATION OF THE MAGISTRATE JUDGE**

1.   that Rock-Tenn's motion to change venue (Doc. 7) be **granted**; and

2.   that this case be **transferred** to the United States District Court for the Southern District of Alabama, Northern Division.

Further, it is

**ORDERED** that the parties shall file any objections to the said Recommendation on or before February 10, 2015. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Secs., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 27th day of January, 2015.

          /s/Charles S. Coody
          CHARLES S. COODY
          UNITED STATES MAGISTRATE JUDGE